UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
OMNIPOTENT U. DRAYTON,

                Petitioner,

                                          07 Cv. 4591 (CLB)

      - against -

                                          ***Memorandum and Order***

JAMES T. CONWAY,

                Respondent.
------------------------------------------------------x
Brieant, J.

      By his Petition, received in the Pro se Office of this Court on May 8, 2007 and docketed May 31, 2007, Mr. Omnipotent Unique Drayton, a New York State prisoner, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Mr. Drayton is incarcerated pursuant to a final judgment of the County Court of Dutchess County (Dolan, J.) dated March 11, 2004 convicting him following a jury trial of Two Counts of Murder in the Second Degree and One Count of Attempted Murder in the Second Degree, Two Counts of Armed Violent Felony of Attempted Robbery in the First Degree and Three Counts of Armed Violent Felony Assault in the First Degree and Two Counts of Armed Violent Felony Possession of a Weapon in the Second Degree. Mr. Drayton was sentenced to concurrent terms of 15 years to life imprisonment on each Murder Count and concurrent determinate terms of 10 years on each of the remaining eight counts with the determinate terms running consecutively to the indeterminate sentences.

      The Indictment in this case, all of the Counts of which were upheld by the trial jury, charged Petitioner with aiding and abetting and acting in concert with Rashan McClinton and

Dennis H. Brown, Jr. with intent to cause the death of Stewart Scott, having caused the death of Mr. Brown by shooting him in the head with a nine millimeter semi-automatic pistol (Count 1). In Count 2, he is charged with aiding, abetting and acting in concert with McClinton under circumstances evidencing a depraved indifference to human life, recklessly engaging in conduct which created a grave risk of death to and thereby caused the death of Brown. The Third Count charges him with aiding and abetting Brown with the intent to cause the death of Stewart Scott by shooting him. The Fourth Count charges Attempted Robbery in the First Degree of Scott engaged in together with aiding and abetting McClinton and Brown. Count 5 charges Petitioner with Attempted Robbery in the First Degree with respect to Scott and Count 6 charges him with Assault of Scott by means of a deadly weapon. Count 7 charges Petitioner with creating a grave risk of death to another person and thereby causing serious physical injury to Scott, who was shot in an attempted robbery. The Eighth Count charges Assault in the First Degree of Scott and the Ninth Count charges Criminal Possession of a Weapon in the Second Degree with respect to a nine millimeter semi-automatic pistol. The Tenth Count charges Criminal Possession of a Weapon in connection with a 45 caliber automatic pistol as to which Drayton was aided and abetted.

Petitioner reviewed his conviction on direct appeal to the Appellate Division Second Judicial Department. His attorney filed a brief raising the same three points now asserted in the Petition in this case: (1) The People failed to prove Appellant's guilt beyond a reasonable doubt and the verdict is against the weight of the evidence; (2) The trial court abused its discretion when it denied Appellant's application for a Missing Witness Charge; and (3) In sentencing

Defendant to 25 years in prison after the Court had offered him a plea bargain of ten years if he pled guilty, an inference arises that the Court punished Appellant for exercising his right to a jury trial.

By its decision dated December 19, 2005 (24 A.D. 3d. 686), the Appellate Division of the Supreme Court held as follows:

> The Defendant's contention that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt is unpreserved for appellate review (citation omitted). In any event, viewing the evidence in a light most favorable to the prosecution (citation omitted), we find that it was legally sufficient to establish his guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (C.P.L. 470.15(5)).
>
> The Defendant's contention that the trial court erred in refusing to give a missing witness charge for his accomplice is without merit (citations omitted). In any event, the Defendant failed to meet his burden of establishing that his accomplice was under the control of the prosecution (citation omitted).
>
> The sentence imposed was not excessive (citation omitted).

Leave to appeal to the New York Court of Appeals was denied on February 7, 2006. No further proceedings have taken place in the state courts and no Petition for Certiorari was filed to the Supreme Court of the United States. This Petition is timely.

The factual background of the crimes viewed most favorably, as it must be, to the prosecution is set forth in the Affidavit of the Chief Assistant District Attorney of Dutchess County (Doc. 4) filed July 8, 2007 and Exhibits attached thereto. Immediately prior to commission of the crime, Mr. Brown was in a vehicle occupied by Rashan McClinton

who was driving. Petitioner, who was in the front passenger seat.

Stewart Scott, a person involved in the Rap music business, had returned from Houston, Texas to visit his mother who lived at 25 Bridge Street in the City of Poughkeepsie. He was the intended victim of the robbery discussed below. He was wearing a gold chain with a diamond neckless pendant, a gold bracelet, diamond earrings and twelve gold teeth. Mr. Scott was walking towards his mother's residence on North Bridge Street in Poughkeepsie and was accosted near the steps to the front porch by three persons in masks and hoods with two guns intending to rob him. There were multiple gun shots as a result of which Scott was hit a total of three times in the side of both legs and seriously wounded. Two persons were observed by him to be in the middle of the street firing directly at him and Scott's recollection was that from 17 to 25 shots were fired. They sounded different, as if they came from different calibers of weapons. Before the shots were fired, no words were exchanged. After about five minutes, a police car arrived and the body of Dennis Brown was lying at the bottom of the stairs to the front porch. The police removed the mask from the dead body and Scott recognized him as Dennis Brown. Scott was unarmed at the time of the assault. It was stipulated that the wounds he sustained constituted serious physical injury, however, he did survive.

The testimony at trial of Shawn Jackson, a cooperating individual, established that immediately prior to the crime, he saw McClinton and Drayton with masks and Dennis Brown with a bandanna covering his face, together at the scene, in possession of guns and dressed all in black. He observed them drive down Mill Street where they parked the car at the intersection

with Bridge Street and got out. He knew that McClinton and Drayton's guns were not revolvers and that Dennis Brown had a 22-caliber revolver. His testimony established that Jackson recognized Stewart Scott and that Brown started to shoot Scott as soon as he got close enough to do so, while Scott was at the steps of his mother's house. When Brown started to shoot, Drayton and McClinton were in front of Jackson and, according to his testimony, fifteen or sixteen rounds were discharged from more than one gun and Brown's gun had a softer sound than the others. When the shots were discharged, Drayton and McClinton moved to the street and Jackson began running back to the car with Drayton and McClinton running behind him. Jackson's testimony clearly establishes the participation of Drayton in the attempted robbery and the case against Petitioner detailed fully in the opposing Affidavit of the Chief Assistant District Attorney, while partially circumstantial, appears to this Court to be more than sufficient. The evidence is confirmed by admissions made by Mr. Drayton to his cell mate, Ruiz, and his comment at the time of arrest that he was expecting to be arrested for the shooting of Scott.

In any event, on the record presented to this Court, it cannot be said that the adjudication in this case by the Appellate Division resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence.

With respect to Petitioner's second contention that it was an abuse of discretion to decline to give the missing witness concerning the accomplice Rashan McClinton, the evidence

presented in the record does not arise to a Constitutional violation. There is no showing that the trial judge did not exercise discretion in determining not to give the charge, and may not have been preserved for state appellate review. The Appellate Division found within its fact finding power that Defendant failed to meet his burden of establishing that his accomplice McClinton was under the control of the prosecution.

From the beginning of the trial it was apparent that Petitioner wanted to call his co-defendant McClinton and that defense counsel held a good faith belief that McClinton would hurt the defense. After both sides rested, the case was reopened in order to stipulate before the jury that McClinton had entered a plea of guilty and had admitted that he (and not Drayton) held a nine millimeter weapon. It was a nine millimeter shell that killed Brown.

It was not until thereafter, during the course of the charge conference, that defense counsel first requested a missing witness charge relating to McClinton. There is no showing that McClinton's testimony beyond the scope of the stipulation would have been of any benefit and, as noted, the New York courts have found that McClinton was not under the control of the prosecutor. He was a friend, associate, accomplice of the Defendant. During the course of investigating the case, Detective Perotta spoke with McClinton and told him they wanted to speak with Petitioner. The following morning, Petitioner telephoned Perotta. In response, he told him that he knew Perotta had spoken with McClinton the previous evening and that Perotta had mentioned his interest in speaking with Drayton. McClinton made two visits to the Dutchess County Jail to speak with Shawn Jackson. McClinton entered a guilty plea in which he

mentioned that a fourth person was present but declined or failed to name Drayton who was that person .

It is a reasonable argument that, in light of the stipulation, McClinton's testimony would have added nothing which was not cumulative evidence, and Petitioner did not meet his initial burden of showing that he was entitled under New York law to a missing witness charge. The trial court could reasonably believe that Petitioner and McClinton were friends even after the crime had been concluded, and that McClinton was equally available to the defense which has the power to issue trial subpoenas.

There is no merit to this claim concerning the jury charge.

The third argument raised in this Court is that Petitioner was punished for exercising his right to proceed to trial because he had been offered a plea and sentence bargain to admit to Manslaughter in the First Degree followed by the imposition with a ten year determinate sentence and once he was convicted at trial for all ten counts in the Indictment, the court-imposed aggregate sentence which is, in effect, a term of 25 years to life. The sentence imposed was within the statute and was found, as a mixed issue of fact and law, by the Appellate Division to be not excessive. The sentence, as imposed in this case, is required by statute and, had the Judge wished to impose a ten year determinate term said to have been offered earlier, the Court would have lacked the power to do it. Ordinarily, a sentence within the range authorized by the state legislature does not violate the Federal Constitution. New York State law permitted the

sentences to be run consecutively in the manner in which they were imposed.

The Petition is denied for want of merit. The Clerk shall file a final judgment. This Court declines to issue a Certificate of Appealability because the case does not present a Constitutional issue deserving of Appellate review, however, Petitioner may continue to proceed *in forma pauperis*.

X

      X

            X

                  X

                      X

SO ORDERED.

Dated: White Plains, New York
       September 10, 2007

                                                        */s/ Charles L. Brieant*
                                                    Charles L. Brieant, U.S.D.J.